**FILED**
**CLERK**

1:22 pm, Aug 17, 2018

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
LUIS FLORES, JR.,

                        Plaintiff,

              -against-

COUNTY OF SUFFOLK, a municipal entity;
Sergeant JAMES MURPHY (Shield No. 428);
Detective JOSEPH COLLINS (Shield No.
1476); Detective FOCAS (Shield No. 1495); and
"JOHN and/or JANE DOES" 1, 2, 3, etc. (whose
identity are unknown but who are known to be
personnel of the Suffolk County Police
Department), all of whom are sued in their
individual and their official capacities,

                      Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:16-cv-02502 (ADS)(ARL)

**APPEARANCES:**

**Beldock Levine & Hoffman LLP**
*Counsel for the Plaintiff*
99 Park Avenue, PH/26th Floor
New York, NY 10016
         By:     Keith M. Szczepanski, Esq.,
                  Jonathan C. Moore, Esq., Of Counsel

**Suffolk County Attorney**
*Counsel for the Defendants*
100 Veterans Memorial Highway,
Hauppauge, NY 11788
         By:     Brian C. Mitchell, Assistant County Attorney

**SPATT, District Judge**:

        On May 17, 2016, the Plaintiff Luis Flores, Jr. (the "Plaintiff" or "Flores") brought the

instant action against the Defendants, the County of Suffolk (the "County"), Sergeant James

Murphy ("Sgt. Murphy"), Detective Joseph Collins ("Det. Collins"), and Detective Focas ("Det. Focas") (Sgt. Murphy, Det. Collins and Det. Focas collectively, the "Individual Defendants") (all together, the "Defendants"), in addition to Leon Ramsey ("LR"). The complaint alleges violations of Flores' constitutional rights based on an alleged false arrest that took place on May 28, 2015, and the alleged subsequent malicious prosecution. He asserts causes of action pursuant to 42 U.S.C. § 1983 in addition to numerous state law constitutional and common-law claims.

Presently before the Court is a motion for summary judgment filed by the Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 56 seeking to dismiss the complaint. For the reasons set forth below, the motion is granted in part and denied in part.

# I. BACKGROUND

Unless otherwise noted, the following facts are undisputed and are drawn from the parties' Local Rule 56.1 statements.

## A. THE FACTUAL BACKGROUND

### 1. The Incident

On May 17, 2015, Flores had lunch with a friend at the Hibachi Grill in North Babylon, New York. He was wearing dark pants, a blue shirt, and black sneakers with white coloration. After finishing his meal, Flores went to the men's bathroom before departing the restaurant to begin his work shift.

At approximately the same time, LR also ate lunch at the Hibachi Grill with his eight year old son, D.R. ("DR"). LR gave Det. Collins, a detective with the Suffolk County Police Department ("SCPD"), a sworn statement during the subsequent investigation that stated the following: At approximately 3:30p.m., LR accompanied DR to the men's bathroom at the restaurant. While in the bathroom, LR noted that a bald white or white Hispanic man with a blue

shirt exited a stall. At that point, DR entered a different stall to use the facilities and LR exited the bathroom. When LR returned, DR informed him that while he was in the stall, someone placed a cell phone over the stall and took a picture of him using the bathroom. DR allegedly described the man to LR as wearing black and gold sneakers and as having a white hand.

DR also provided Det. Collins with a sworn statement that specified the following: DR and his father entered the bathroom and, while waiting for an empty stall, DR noticed a man with a blue shirt exit a stall. DR entered a different stall and LR exited the bathroom. While he was in the stall, DR observed a white hand holding a cell phone take two pictures of him. He noticed that the perpetrator was wearing dark pants as well as black sneakers with gold or yellow coloration.

Both parties agree that Flores was in the men's bathroom at the same time as LR and DR. After LR left the bathroom, the Plaintiff remained in the bathroom at the same time as DR for approximately eighteen seconds. Flores then exited the bathroom and left the restaurant immediately.

### 2.  The Investigation

LR called 911 to report the incident, and SCPD Officer Kevin Nolan ("Officer Nolan") responded to the restaurant. Officer Nolan brought LR and DR to SCPD's First Precinct station where they met with Det. Collins. At this point, LR and DR provided the above-referenced sworn statements to Det. Collins. Later that day, Det. Collins went to the Hiabachi Grill to continue the investigation. He reviewed the restaurant's surveillance video and investigated the alleged crime scene. Portions of the surveillance video were given to Det. Collins for additional review.

On May 26, 2015, Det. Collins spent several hours reviewing surveillance video footage of various places in the Hibachi Grill from the date of the incident. He reviewed several areas, but focused much of his time on the bathroom and the entrance to the restaurant. Det. Collins viewed

the footage for the relevant time period and cross-referenced each individual who was present in the men's restroom with DR's description. Using this process, Det. Collins was able to exclude potential suspects. This review continued into the following day. During the course of this effort, Det. Collins noticed Flores, who was wearing a blue shirt that day. While examining footage from a camera pointed at the restaurant entrance, Det. Collins observed that Flores left the restaurant at approximately 3:41p.m. and that he was also wearing black sneakers. When the video was slowed down and evaluated using a frame-by-frame analysis, Det. Collins observed that Flores' black sneakers appeared to have gold or yellow markings on the side. Sgt. Murphy also reviewed the video footage in question and noticed the perceived yellow or gold markings when the video was stopped. Both officers agree that when viewing the video at full speed, the sneaker markings that appear yellow or gold in the still images appear white. Det. Collins was able to exclude other individuals who had entered and exited the bathroom during the timeframe at issue.

In their review, Det. Collins and Sgt. Murphy also noticed a few inconsistencies between LR's sworn statement and the video evidence. However, they did not believe that the inconsistencies in LR's statement impacted the accuracy of DR's statement.

### 3. The Arrest & Prosecution

At that point in the investigation, Sgt. Murphy authorized the release of a Crime Stoppers report that included images of the Plaintiff taken from the Hibachi Grill surveillance video. On May 28, 2015, Flores received a phone call from a friend reporting that he was on the news. That friend also followed up with a link to an online story, which incorporated images of Flores from the incident date. Flores testified in his deposition that after speaking with his father, he called the police to "straighten this whole thing out." Det. Collins also received information that morning

from persons who viewed the Crime Stoppers report and identified the individual in the report as the Plaintiff.

Later that day, Det. Collins and Det. Focus arrived at Flores' residence at 14 Ibsen Avenue, Dix Hills, New York. When speaking with the detectives in his home, Flores identified himself as the person in the blue shirt depicted in the surveillance video. Flores' mother also spoke with the detectives and provided them with what she claimed was the Plaintiff's cell phone. Det. Collins then arrested the Plaintiff and took him to the SCPD precinct station. Sgt. Murphy spoke with Flores' father, who called from Tampa, Florida to offer to travel to New York to bail-out his son. Subsequently, he arrived at the SCPD precinct station and Flores was released on station house bail the same day as his arrest. The Plaintiff was provided with a Desk Appearance Ticket, with a court date of July 17, 2015.

On June 10, 2015, Det. Collins contacted Assistant District Attorney John Cortes ("ADA Cortes") to request assistance in an application for a search warrant to search the cell phone provided by Flores' mother. Later that day, a search warrant was issued by Acting New York State Supreme Court Justice Mark D. Cohen. A search of the cell phone did not reveal any photographs of a child or any images related to the incident. This fact as well as all other information relating to the investigation was shared with ADA Cortes. In addition to the results of the cell phone search, ADA Cortes also was provided with the surveillance videos on the date of the incident as well as the sworn statements of LR and DR.

On July 27, 2015, Flores was arraigned on one count of Unlawful Surveillance in the Second Degree in violation of New York State Penal Law § 250.45.03(a), which states in pertinent part:

> For no legitimate purpose, he or she intentionally uses or installs, or permits the utilization or installation of an imaging device to surreptitiously view, broadcast or record a person in a bedroom, changing room, fitting room, restroom, toilet, bathroom, washroom, shower or any room assigned to guests or patrons in a motel, hotel or inn, without such person's knowledge or consent.

N.Y. Penal Law § 250.45.03(a). The case was adjourned until August 10, 2015 to allow ADA Cortes to further investigate the matter. On August 10, 2015, the case was adjourned for a second time to continue the investigate the incident. During his review of the materials, ADA Cortes noted that there were inconsistencies with the video footage and LR's sworn statement provided to SCPD. Further, an examination of text messages on the cell phone were consistent with the Plaintiff's version of events as presented by his attorney. Ultimately, the District Attorney's Office concluded that the case could not be proven beyond a reasonable doubt. On October 14, 2015, the case against Flores was dismissed on application by ADA Cortes. Flores remained free on bail throughout the case.

## B. THE PROCEDURAL BACKGROUND

On May 17, 2016, the Plaintiff commenced this action against the Defendants by filing a complaint in this Court. The Defendants answered the complaint on August 19, 2016. On October 24, 2017, the Plaintiff voluntarily dismissed all claims against LR, pursuant to FED. R. CIV. P. 41(a). On December 15, 2017, the Defendants filed the instant motion for summary judgment seeking dismissal of the Plaintiff's claims.

## II. DISCUSSION

## A. STANDARD OF REVIEW: FED. R. CIV. P. 56

Pursuant to Rule 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Kwong v.*

*Bloomberg*, 723 F.3d 160, 164-65 (2d Cir. 2013); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). When deciding a motion for summary judgment, "[t]he Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non–moving party.'" *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1998)). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In considering a summary judgment motion pursuant to Rule 56, the Court must "view the evidence in the light most favorable to the non-moving party … and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations omitted); *see also Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007) (noting that in deciding a summary judgment motion, the court will "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all inferences and resolv[e] all ambiguities in favor of the nonmoving party"); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (stating that in deciding a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." (internal citations omitted)).

It is the movant's burden to initially demonstrate the absence of material facts that preclude summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005) (citing *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994)). Such a "burden on the moving party may be discharged by 'showing' … that there is an absence of evidence to support the nonmoving party's

case." *PepsiCo, Inc. v. CocaCola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986)). If the moving party meets the initial burden, the nonmoving party must present specific facts that demonstrate there is a genuine issue that should be left for the fact-finder to decide. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002); *see also Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (requiring the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts … the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" (internal citations omitted)).

It is not the Court's responsibility to resolve any purported issues of disputed facts, but merely to "assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (internal citations omitted); *accord Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012) (stating that the Court should not attempt to resolve issues of fact, but rather "assess whether there are any factual issues to be tried"); *Cioffi v. Averill Park Cent. Sch. Dist. Bd. Of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (noting that the responsibility of the district court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial" (quoting *Anderson*, 477 U.S. at 249)). If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not present. *Anderson*, 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient. Conjecture, speculation, or conclusory statements are not enough to defeat summary judgment. *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citations omitted).

**B.  QUALIFIED IMMUNITY**

The Defendants contend that the Plaintiff's Section 1983 claims including false arrest, malicious prosecution, and due process violations, cannot be sustained because the Individual Defendants are entitled to qualified immunity.  In opposition, the Plaintiff argues that the Individual Defendants lacked probable cause to arrest and prosecute Flores.  The Court finds that the Individual Defendants arguably possessed probable cause at the time of Flores' arrest and his arraignment, entitling them to qualified immunity on the false arrest and malicious prosecution claims.

"The qualified immunity defense is intended to strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority. The qualified immunity doctrine protects government officials from civil liability in the performance of discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Lee v. Sandberg*, 136 F.3d 94, 100-01 (2d Cir. 1997) (internal citations and quotation marks omitted); *accord Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995) (noting that under qualified immunity, "a government official may claim immunity from suit only when in light of clearly established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful"); *Mediavilla v. City of N.Y.*, 259 F. Supp. 3d 82, 95 (S.D.N.Y. 2016) ("The doctrine of qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments' by immunizing them from suit for damages unless their conduct violated clearly established constitutional rights of which a reasonable person would

have known." (quoting *Stanton v. Sims*, 571 U.S. 3, 134 S. Ct. 3, 5, 187 L. Ed. 2d 341 (2013) (internal citations and quotation marks omitted))).

It provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986). Whether or not the Individual Defendants are entitled to qualified immunity is a question of law. *See Hunter v. Bryant*, 502 U.S. 224, 228, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (noting that qualified immunity should be decided "at the earliest possible stage in the litigation"); *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir. 1995) ("Since qualified immunity is intended to protect government officials from the harassing and expensive burdens of litigation as well as the threat of monetary damages, courts have encouraged the use of summary judgment as a procedural device to dispose early in the litigation process of those claims barred by qualified immunity.").

The Supreme Court has explained that "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, —U.S.—, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)); *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (same); *see also Simms v. Vill. of Albion*, 115 F.3d 1098, 1106 (2d Cir. 1997) (holding that qualified immunity protects public officials "from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or insofar as it is objectively reasonable for them to believe that their acts do not violate those rights" (internal citations and quotation marks omitted)). A principle is clearly established if it has a "sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589. In other words, it must be "dictated by controlling

authority or a robust consensus of cases of persuasive authority." *Id*. at 589-90 (internal citations and quotation marks omitted).

The Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Id*. at 590 (quoting *Plumhoff v. Rickard*, —U.S.—, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014)). Therefore, the Court must examine whether the Individual Defendants' probable cause determination at the time of the arrest was objectively reasonable. *See White v. Pauly*, —U.S. —, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017); *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000); *Serrano v. City of N.Y.*, No. 16 Civ. 8105 (AKH), 2018 WL 3392869, at *6 (S.D.N.Y. July 12, 2018) (noting that "the focus of the [qualified immunity] inquiry … centers on the facts and circumstances known to the officers at the time of the arrest").

For the Individual Defendants' conduct to be unlawful, it must have been clearly established by either a Supreme Court or a Second Circuit Court of Appeals case directly on point, or there must be agreement from other federal courts. *See Moore v. Vega*, 371 F.3d 110, 115 (2d Cir. 2004) ("Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." (citing *Townes v. City of N.Y.*, 176 F.3d 138, 144 (2d Cir. 1999))).

### 1. False Arrest

A Section 1983 claim for false arrest rests upon the Fourth Amendment right of an individual to be "secure ... against unreasonable searches and seizures," including arrests without "probable cause." U.S. Const. Amend. IV; *accord Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "A section 1983 claim for false arrest is substantially the same as a claim for false arrest

under New York law." *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852). Further, in New York State, false arrest and false imprisonment claims are identical. *Rizzo v. Edison, Inc.*, 419 F. Supp. 2d 338, 345 (W.D.N.Y. 2005), *aff'd*, 172 F. App'x 391 (2d Cir. 2006). "To state a claim for false arrest under New York law, a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

The existence of probable cause is a complete defense to a Section 1983 claim for false arrest, and constitutes justification for the arrest. *Jackson v. City of N.Y.*, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013) (citing *Weyant*, 101 F.3d at 852; *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)); *see also Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003) ("If probable cause existed, [the defendant] as a police officer would be privileged to make an arrest."). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *see also see Gerstein v. Pugh*, 420 U.S. 103, 111-12, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975) ("The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'") (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964) (alteration in original))). "[T]he eventual disposition of the criminal charges is irrelevant to the probable cause determination."

*Hahn v. Cty. of Otsego*, 820 F. Supp. 54, 58 (N.D.N.Y. 1993) (citing *Pierson v. Ray*, 386 U.S. 547, 555, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967)).

In this case, the Individual Defendants are entitled to qualified immunity because the Individual Defendants had arguable probable cause to arrest the Plaintiff. "Arguable probable cause exists when 'it was objectively reasonable for the officer to believe that probable cause existed, or ... officers of reasonable competence could disagree on whether the probable cause test was met.'" *Kass v. City of N.Y.*, 864 F.3d 200, 206 (2d Cir. 2017) (quoting *Myers v. Patterson*, 819 F.3d 625, 633 (2d Cir. 2016)); *see also Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (holding that a police officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest").

"In order to be entitled to summary judgment on such a defense, the officer must adduce sufficient facts that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff, could conclude that it was objectively unreasonable for the officer to believe that probable cause did not exist." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez*, 202 F.3d at 634 (quoting *Miloslavsky v. AES Eng'g Soc'y*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993)). The Second Circuit has commented that when a district court is evaluating whether or not an officer had arguable probable cause in effecting a warrantless arrest:

> It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable. Even on summary judgment, where all facts must be viewed in the light most favorable to the non-

13

> moving party, for the purpose of qualified immunity and arguable probable cause, police officers are entitled to draw reasonable inferences from the facts they possess at the time of [an arrest] based upon their own experiences.

*Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001) (internal citations and quotation marks omitted); *accord Rodgers v. City of Amsterdam*, 303 F.3d 155, 158-59 (2d Cir. 2002) ("Thus, a police officer who makes a warrantless arrest is entitled to summary judgment on the ground of qualified immunity only 'if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that officers of reasonable competence could disagree on the legality of the defendant's actions.'" (quoting *Cerrone*, 246 F.3d at 202)).

This determination is based on the totality of the circumstances. *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008) (holding that because the probable cause standard "is fluid and contextual, a court must examine the totality of the circumstances of a given arrest"); *Kent v. Katz*, 312 F.3d 568, 576 (2d Cir. 2002) ("[T]he existence of probable cause is to be determined on the basis of the totality of the circumstances."). The Supreme Court recently noted in its description of a totality of the circumstances analysis that "the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation." *Wesby*, 138 S. Ct. at 588. "A factor viewed in isolation is often more 'readily susceptible to an innocent explanation' than one viewed as part of a totality." *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). In the Court's view, based on the totality of the circumstances, the Individual Defendants had arguable probable cause to arrest the Plaintiff.

At the time of Flores' arrest, the Individual Defendants had ascertained the following information: (1) using video surveillance from the restaurant, the Plaintiff was at the crime scene, i.e. the men's bathroom, around the time that the alleged crime took place; (2) the victim identified the perpetrator as white with dark pants as well as black sneakers with gold or yellow coloration;

(3) other persons who were present at the crime scene at that time were excluded from suspicion based on their attire; (4) the Plaintiff was seen in the surveillance footage with a blue shirt, dark pants, and black sneakers; (5) when viewing portions of the video, including still photographs, the Plaintiff's black sneakers appear to have yellow or gold markings; and (6) when viewing portions of the video at full speed, the markings on the side of the sneakers appear to be white.

These facts are sufficient to establish arguable probable cause. *See, e.g.*, *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (probable cause existed due to the circumstances at the scene, which reinforced the statements from the purported victims).

The Plaintiff asserts that the victim's description is too vague to establish probable cause. This near-singular reliance on the vagueness of the description is misplaced as it apparently ignores other critical facts regarding the incident. The fact that "[the victim]'s initial description of this individual … is not a model of specificity does not render the arrest unconstitutional. Rather, in the Court's view, the jury could have found that the totality of facts and circumstances known to the arresting officers … justified their actions." *Parker v. Bulik*, No. 11-cv-5412, 2017 WL 3396440, at *9 (E.D.N.Y. 2017) (Spatt, J.). This is primarily because although generally, "when [a] description could have applied to any number of persons … probable cause does not exist." *Jenkins*, 478 F.3d at 90, it is doubtful that the victim's depiction of the perpetrator could have applied to anyone other than Flores. This is because in addition to his race and clothing, DR also placed the suspect at the scene of the crime within a very specific time frame, which allowed the Individual Defendants to examine surveillance video footage and exclude other individuals. Therefore, in the Court's view, this description was not so deficient as to conclude that it was objectively unreasonable for the Individual Defendants to arrest the Plaintiff. *See United States v. Jabbar*, 648 F. Supp. 1567, 1569-70 (S.D.N.Y. 1986) (finding that "a black male wearing a blue

shirt with white trim in the company of another black male wearing a red and black plaid jacket on Lexington Avenue near 123rd Street was [a] sufficiently detailed [description] so that it would not 'fit a very large group of ordinary young men'" (quoting *United States v. Rosario*, 543 F.2d 6, 8 (2d Cir. 1976))).

Flores also focuses on the undisputed fact that the sneakers he was wearing that day were, in fact, black with white coloration. Yet, at the time of the arrest, the officers were unaware of the actual color of the Plaintiff's sneakers, as they only had the reviewed video surveillance footage. In this analysis, the Court "must decide whether an officer of reasonable competence could properly have believed that [the Plaintiff] matched the description provided by [the victim], even if the description … was not precisely accurate." *Hargroves v. City of N.Y.*, 411 F. App'x 378, 385 (2d Cir. 2011).

As it was objectively reasonable for the officers to conclude that the Plaintiff's sneakers were likely black with yellow or gold coloration, the fact that the officers were mistaken after the fact is irrelevant to a qualified immunity analysis. Det. Collins viewed multiple still images from the video surveillance footage that depicted the Plaintiff wearing black with yellow or gold sneakers. While the Court acknowledges that the full speed footage portrayed the sneakers as black with white coloration, that does not preclude arguable probable cause. *See, e.g.*, *Hargroves*, 411 F. App'x at 385 (finding that police officers were entitled to qualified immunity regardless of whether the individual was wearing an orange jacket because "a reasonable officer could easily have mistaken [a] red and blue jacket as being orange and black").

Contrary to the Plaintiff's contention, it is irrelevant that the charge was later dismissed, as "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant

to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). Probable cause is a significantly less stringent standard than the reasonable-doubt standard, which applies in criminal cases. *United States v. Manley*, 632 F.2d 978, 984 (2d Cir. 1980). A police officer confronted with an alleged culprit is not expected to determine ultimate guilt or innocence prior to making an arrest.

The totality of the circumstances compel this Court to conclude that, even as viewed in the light most favorable to the Plaintiff, the record in this case establishes that the Individual Defendants acted reasonably in arresting Flores.

Further, the Defendants argue and the Court agrees that it was not clearly established that the circumstances with which the Individual Defendants were confronted and acted upon violated the Plaintiff's constitutional rights. In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). "The 'clearly established' standard ... requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590. It was not clearly established that the Individual Defendants lacked probable cause based on the information available to them at the time of the arrest.

The first task is to define with specificity the constitutional right in this case. The Court must consider whether it was clearly established in May 2015 that a warrantless arrest based on a partial victim description, and video surveillance footage that places the suspect at the scene of the crime during the alleged crime and that purportedly matches the partial victim description does not establish probable cause. As neither party "can 'identify a case where an officer acting under similar circumstances' was held to have acted unconstitutionally," the Court cannot conclude that,

based on the information available to the Individual Defendants at the time of the arrest, it was not clearly established that they lacked probable cause. *Grice v. McVeigh*, 873 F.3d 162, 169 (2d. Cir. 2017) (quoting *White*, 137 S. Ct. at 552).

The Plaintiff cites *Curley v. Vill. of Suffern*, 268 F.3d 65 (2d Cir. 2001) and *Jenkins v. City of N.Y.*, 478 F.3d 76 (2d Cir. 2007) to support his argument that the law was clearly established in these particular circumstances. *Curley* does not support the Plaintiff's contention primarily because the facts are insufficiently analogous to the instant case and the holding in *Curley* is contrary to the Plaintiff's theory. In *Curley*, the Plaintiff was arrested following an altercation at Mugg's Pub, a bar in which he was a part owner. The parties agreed that:

> (1) [A victim] approached defendant officer McGee and claimed plaintiff assaulted him; (2) after officer McGee came to Mugg's Pub and asked plaintiff to step outside to talk about the incident, [the victim] arrived in the area with blood on his lip; (3) as plaintiff was talking to McGee, [the victim] yelled "He hit me. He hit me."; (4) at the sight of [the victim] and upon learning that [the victim] accused him of assault, plaintiff became "very irate"; (5) in this excited state, plaintiff may have used obscenities; (6) [a second witness] approached the officers also yelling that plaintiff hit him; (7) plaintiff admitted to defendant officer Gloede that he did strike [the second witness] during the struggle in the kitchen; and (8) plaintiff gesticulated with his arms at his sides and his hands in front of him upon being told by officer Gloede—who was about an arm's length away—that he was under arrest.

268 F.3d at 69. These facts are inapposite to those in the instant case. While both cases involve instances of arrest partially based on information from a victim, the arresting officers' sources are wholly different. Further, the Second Circuit's decision in *Curley*, that the arresting officers had probable cause to arrest the plaintiff, is contrary to Flores' position.

*Jenkins* similarly involves a distinct factual circumstance that precludes the Court from fidning that the illegality of Flores' arrest was clearly established. *Jenkins* involved the following facts:

> Between June 21 and July 12, 1999, a series of robberies and a homicide occurred in Brooklyn, New York. Based on witness and victim descriptions, the police came

to believe that the same person was involved in each of the crimes. In a number of the robberies and the homicide, witnesses indicated the participation of a second individual. … During the first robbery, the victim's red Honda Civic was stolen. The Honda was subsequently described by five of the other robbery victims as the vehicle used by their assailants. When police recovered the Honda on July 13, 1999, they discovered, along with property belonging to one of the robbery victims, the fingerprints of Derrick Blyther. … [The defendants] rely [ ] on the assertion that Jenkins matched the general description provided by Nancy Lorient. Lorient was robbed three days before Jenkins' arrest. She described both of her assailants as between twenty and twenty-five years of age, one as 5′ 6–8″ tall, 150 pounds, and the other as 5′ 6–8″ tall, 160 pounds. In addition, she indicated that one man had dread locks and wore a white t-shirt. As to the other, she initially indicated that he wore a blue t-shirt with burgundy "stripes;" however, two hours later she described the shirt as dark-colored with burgundy "letters." On the date of his arrest, Jenkins was twenty-six years old, six feet tall, 160 pounds, and wore a long-sleeved shirt with alternating bands of blue and orange (each about three inches in width). … The extent to which Jenkins' shirt matched the one described by Lorient might have become significant to the probable cause determination, but only if Jenkins was tied to the Lorient crime through his presence at Blyther's home in the early morning hours. … Blyther's fingerprints were discovered in the stolen Honda. The police therefore had probable cause to believe Blyther was involved in the six robberies in which the Honda was described by witnesses as the getaway vehicle. Lorient, however, indicated that the suspects approached and fled on foot. Thus, the police lacked probable cause to believe Blyther was involved in the Lorient robbery. With nothing tying Blyther to the Lorient robbery, the fact that Jenkins was discovered in Blyther's apartment wearing a shirt somewhat similar to the one described by the victim three days earlier is at best a coincidence. It certainly does not establish probable cause.

*Jenkins*, 478 F.3d at 81-82, 89-90.  In *Jenkins*, the officers lacked probable cause because the only things tying the Plaintiff to the Lorient robbery were his shirt and his presence in the alleged perpetrator's apartment during the police raid.  There was nothing connecting him to the scene of the Lorient robbery or any other circumstances that were part of the probable cause analysis.  That is not the case here.  The Individual Defendants, using unique sources (i.e. video surveillance footage) established Flores' presence at the scene of the crime at the time of the alleged incident.

Accordingly, neither *Curley* nor *Jenkins* sufficiently establishes that the law was "sufficiently clear that every reasonable official would understand that what he is doing was unlawful."  *Wesby*, 138 S. Ct. at 589 (internal citations and quotation marks omitted).  As the

"unlawfulness of [the Individual Defendants'] conduct was [not] 'clearly established at the time,'" the Defendants are entitled to qualified immunity. *Id*. at 590 ("It is not enough that [a] rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.").

Accordingly, the Defendants' motion for summary judgment is granted with respect to the Plaintiff's false arrest claim under Count I and Count II as well as Count III in its entirety.

### 2. Malicious Prosecution

The Individual Defendants are also entitled to qualified immunity on the malicious prosecution claim if there was arguable probable cause at the time the criminal proceeding occurred. *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). The elements of a malicious prosecution claim are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (internal citations omitted). In a Section 1983 claim, a plaintiff must also demonstrate that there was "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). "The existence of probable cause will defeat a claim of malicious prosecution and unreasonable search and seizure." *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012). It is also a complete defense to a New York State law claim of malicious prosecution. *Hoyos v. City of N.Y.*, 999 F. Supp. 2d 375, 389 (E.D.N.Y. 2013).

An officer is entitled to qualified immunity on a malicious prosecution claim if he possesses arguable probable cause regarding the charge or charges. That exists "where, accounting for any new information learned subsequent to an arrest, 'it was not manifestly unreasonable for

[the officer] to charge [the plaintiff]' with the crime in question." *Jean v. Montina*, 412 F. App'x 352, 354 (2d Cir. 2011) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 572 (2d Cir. 1996)). As discussed *supra* in Section II.B.1, the Individual Defendants had arguable probable cause at the time the Plaintiff was arrested. Although the search of a cellular phone did not reveal any images related to the incident, in the totality of the circumstances, the Individual Defendants had arguable probable cause at the time the judicial proceeding commenced. Therefore, the Individual Defendants had arguable probable cause to charge the Plaintiff with Unlawful Surveillance in the Second Degree. *See, e.g.*, *Sanseviro v. New York*, 158 F. Supp. 3d 131, 141 (E.D.N.Y. 2016) (dismissing malicious prosecution claim because "the record, viewed in the totality of the circumstances, establishes the existence of 'arguable probable cause'" at the time the plaintiff was charged); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 540 (S.D.N.Y. 2015) (granting summary judgment as to malicious prosecution claim because the defendants had arguable probable cause to prosecute the plaintiff at the time he was charged); *Costello v. Milano*, 20 F. Supp. 3d 406, 420 (S.D.N.Y. 2014) (dismissing malicious prosecution claim because there was arguable probable cause at the time the plaintiff was charged).

Accordingly, the Defendants' motion for summary judgment is granted with respect to the Plaintiff's malicious prosecution claim under Count 1 and Count II as well as Count VII in its entirety.

### 3. Due Process

Finally, the Plaintiff alleges a stigma-plus claim, which allows a plaintiff to recover for government defamation under federal constitutional law. *Abdul-Salaam v. Lobo-Wadley*, 665 F. Supp. 2d 96, 102 (D. Conn. 2009). A stigma-plus claim requires a plaintiff to allege "(1) the utterance of a statement about [the plaintiff] that is injurious to her reputation, 'that is capable of

being proved false, and that he or she claims is false,' and (2) 'some tangible and material state-imposed burden ... in addition to the stigmatizing statement.'" *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds*, *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003)).

In the instant case, the Defendants failed to move for summary judgment on the stigma-plus claim in their initial brief but instead first articulated the argument in their reply brief. "[A] district court is free to disregard argument raised for the first time in reply papers, especially on a motion for summary judgment." *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 376 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 71 (2d Cir. 2010). In the Second Circuit, the decision whether to consider an argument asserted in a reply is at the sound discretion of the district court. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005). The only mention of the Defendants' argument as it pertains to the stigma-plus claim is a one-sentence argument on the final page of the brief. This is plainly insufficient. Therefore, the Court declines to consider the Defendants' argument that they are entitled to summary judgment on the Plaintiff's stigma-plus claim. *See, e.g.*, *Genger ex rel. AG Properties Co. v. Sharon*, 910 F. Supp. 2d 581, 591 (S.D.N.Y. 2012) (collecting cases); *Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 349 (S.D.N.Y. 2009) (collecting cases); *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998) (collecting cases).

Accordingly, the Defendants are not entitled to summary judgment dismissing the Plaintiff's stigma-plus claim under Count I.

### III. CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment pursuant to Rule 56 is granted in part and denied in part. In particular, the Plaintiff's false arrest, false imprisonment, search and seizure and malicious prosecution claims under Counts I and II are dismissed with prejudice. Counts III and VII are also dismissed with prejudice. The remainder of the Defendants' motion for summary judgment is denied.

It is **SO ORDERED**:

Dated: Central Islip, New York

August 17, 2018

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge