UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LUIS FLORES, JR.,

                Plaintiff,           **MEMORANDUM OF**
                                        **DECISION & ORDER**
              -against-              2:16-cv-2502 (ADS) (ARL)

COUNTY OF SUFFOLK, a municipal entity;
Sergeant JAMES MURPHY (Shield No. 428);
Detective JOSEPH COLLINS (Shield No.
1476),

                Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Beldock Levine & Hoffman LLP**
*Attorneys for the Plaintiff*
99 Park Avenue, 16th Fl.
New York, NY 10016
      By:    David Bruce Ranking, Esq.,
              Jonathan C. Moore, Esq.,
              Luna Droubi, Esq., Of Counsel.

**Bernstein Clarke & Moskovitz PLLC**
*Attorneys for the Plaintiff*
11 Park Place, Suite 914
New York, NY 10007
      By:    Joshua S. Moskovitz, Esq., Of Counsel.

**Law Office of Keith Szczepanski**
*Attorney for the Plaintiff*
38-17 52nd Street, 3rd Fl.
Sunnyside, NY 11104
      By:    Keith M. Szczepanski, Esq.

**Suffolk County Department of Law**
*Corporation Counsel for Defendants*
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788
      By:    Brian C. Mitchell, Assistant County Attorney.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 18 2020 ★

LONG ISLAND OFFICE

1

**SPATT, District Judge:**

On June 25, 2019, a jury found that plaintiff Luis Flores, Jr. (the "Plaintiff") did not prove by a preponderance of the evidence either a federal "stigma plus" claim, in violation of the Fourteenth Amendment, or a state law defamation claim, against defendants Suffolk County (the "County"), and two Suffolk County Police Department ("SCPD") members, Detective Joseph Collins ("Collins") and Detective Sergeant James Murphy ("Murphy" and collectively, the "Defendants"). The Plaintiff had been charged by the County with a single count of unlawful surveillance in the second degree, and the police posted a Crime Stoppers "Crime Alert" (the "Crime Alert") to local media that contained the Plaintiff's picture and claimed that he had taken photos of an eight-year-old boy in a restaurant's bathroom.

After the County dropped the charge, namely because it could not find any photographs on his seized cell phone, the Plaintiff brought this action under 42 U.S.C. § 1983, raising the stigma plus and defamation claims, as well as claims for false arrest, malicious prosecution, and a claim against the County under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The Court granted the Defendants' motion for summary judgment in part, as to the false arrest, malicious prosecution, and *Monell* claims, and denied it in part, as to the stigma plus and defamation claims.

Those claims proceeded to trial, and on July 25, 2019, a jury returned a verdict in favor of the Defendants. Presently before the Court is the Plaintiff's motion for a new trial under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 59. The Plaintiff argues that the testimony and evidence presented at trial support a finding for him on both claims.

For the following reasons, the Court denies the Plaintiff's motion, and closes the case.

## I. BACKGROUND

### A. The Relevant Facts and Pre-Trial History

The Court presumes familiarity with the factual and procedural background of this case. The Court will not engage in a complete recitation of the facts adduced at the trial, just a discussion of those that are relevant to the Plaintiff's instant motion.

The Plaintiff brought this action in May 2016, alleging that: (1) security camera footage at a restaurant showed him exiting a restroom around the time that an eight-year-old boy had told his father that a man had taken a photo of him in that restroom; (2) the SCPD released the "Crime Alert" to the local media, which contained the Plaintiff's photo and alleged that he leaned over a bathroom stall and took photos of a child; (3) the Plaintiff turned himself in to the SCPD, who confiscated his cell phone; (4) he was charged with a single count of unlawful surveillance in the second degree, a violation of New York Penal Law § 250.459(3)(A); (5) local media reported his arrest, along with his address and locations of employment, which caused him to lose his jobs and for his family to receive death threats; and (6) three searches of the Plaintiff's phone yielded no evidence that he had photographed the child, and the County dismissed the charge\ against him. ECF 1.

In August 2018, the Court granted in part and denied in part the Defendants' FED. R. CIV. P. 56 motion for summary judgment, allowing the stigma plus and defamation claims to proceed to trial. ECF 43. The Court later denied the Defendants' motion for reconsideration. ECF 50.

### B. The Trial and Subsequent Procedural History

Murphy testified that he approved of both the release of the Crime Alert and its underlying content, namely, that the Plaintiff was the individual identified in the restaurant's

3

security camera footage. ECF 78-1 (hereinafter, "Tr.") at 335–36. The Defendants also submitted an email exchange (the "May 26, 2015 email") between Murphy and his precinct's public information office, in which he wrote that the "[s]uspect in video did take pictures of an underage minor in the bathroom stall of the above restaurant." ECF 78-4. Collins testified that he never told the Plaintiff's family that the Plaintiff had photographed children in the restaurant. Tr. At 245. The Plaintiff's attorney provided deposition testimony in which Collins had said the following:

> Question: Was there any point that you made reference to Mr. Flores taking photos of other children at the Hibachi Grill on May 17th?
>
> Answer: Yes, I talked to Ms. Maribelle Elie and said I think he was taking a photo of someone else.
>
> Question: What led you to that?
>
> Answer: From the review of the surveillance video.
>
> Question: What was it in the surveillance video?
>
> Answer: It appears he was using his phone. He was lifting it up in an awkward angle as if taking a photo.
>
> *Id.* at 248–49.

The Plaintiff testified that he did not photograph a child in the restaurant, and that he did not commit the acts alleged in the Defendants' defamatory statements. *Id.* at 71, 85. He argued that the District Attorney's Office agreed, in that it dropped the charges against him. *Id.* at 85. He claimed that on the night of the incident, he escorted his girlfriend to the ladies room; used the restroom himself; waited outside the door, thinking that his girlfriend was still in the ladies room; and then left upon receiving a text message from his girlfriend that she was already outside of the restaurant. *Id.* at 74–75. He also relied on the testimony of John Friberg, the

4

detective who examined his phone and found no proof that the Plaintiff had taken any pictures in the restaurant's bathroom. *Id.* at 187–89.

At the charge conference, the court noted that the Plaintiff had alleged three defamatory statements: (1) the claims written in the Crime Alert; (2) the May 26, 2015 email; and (3) the alleged statements that Collins made to the plaintiff's family. *Id.* at 576. At summation, the Defendants argued that they had probable cause to believe that the Plaintiff had taken the picture of the child, thus making the issuance of the Crime Alert proper. *Id.* at 499–500. They relied on notes taken by SCPD officers on statements made by members of the public after they had seen the Crime Alert; a text message that the Plaintiff had sent to a friend where he said he intended to go to class on the night he was arrested, but that his lawyer advised him not to speak about the pending case; Friberg's testimony; the amount of time that the Plaintiff waited outside the bathroom before leaving the restaurant; and the sneakers the Plaintiff was wearing. *Id.* at 512–30.

The Defendants directed the jury to look at the responses to the Crime Alert, without commenting on the content of those responses, and argued that the responses did not match with the Plaintiff's self-assessment that he was not the type of person who would take pictures of a child in the bathroom. *Id.* at 512. They said that the text message to his friend, in which he told the friend not to say a word about his arrest, was not reflective of someone who was cooperating with the police. *Id.* at 515. The Defendants also sought to undermine the Plaintiff's supposed cooperation by noting the discrepancies between his trial court testimony that he gave his phone to the police while at his home, and an earlier sworn statement that he turned the phone in at the police precinct. *Id.* They claimed that the lack of testimony from the Plaintiff's employers undercut his contention that the Crime Alert caused him to lose his jobs. *Id.* at 518. The

5

Defendants noted that Friberg had testified to the possibility that there could have been photos that the Plaintiff deleted from the phone. *Id.* at 517.

In addition, the Defendants said that Collins identified the Plaintiff by comparing the description given by the victim—black and gold sneakers—with the security camera footage of the restroom. *Id.* at 505. They conceded that when viewing the video in real time, the shoes worn by the Plaintiff appeared to be black with white markings, but that when the video was paused, a person could see that the shoes had yellow markings. *Id.*

On June 25, 2019, after a one-week trial, the jury found that the Plaintiff did not prove that the statements about him with regard to the bathroom incident and the child were false, and thus, that he failed to prove his stigma plus claim by a preponderance of the evidence. ECF 72. In addition, the jury found that the Plaintiff failed to prove that the Defendants committed defamation. *Id.*

The Plaintiff now moves under Rule 59 for a new trial.

## II. DISCUSSION

### A. The Legal Standard

Rule 59 provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" FED. R. CIV. P. 59(a). Grounds for granting such a motion include a verdict that is against the weight of the evidence, *Manley v. AmBase Corporation*, 337 F.3d 237, 245 (2d Cir. 2003), substantial errors in the administration or exclusion of evidence, *Stampf v. Long Island Railroad Company*, 761 F.3d 192, 203 (2d Cir. 2014), prejudicial misconduct from counsel, *Pappas v. Middle Earth Condominium Association*, 963 F.2d 534, 540 (2d Cir. 1992), and non-harmless errors in jury instructions, *United States v. Kozeny*, 667 F.3d

122, 130 (2d Cir. 2011), or verdict sheets, *Armstrong ex rel. Armstrong v. Brookdale University Hospital & Medical Center*, 425 F.3d 126, 136 (2d Cir. 2005).

A jury's verdict should "rarely be disturbed" and a motion for a new trial should be granted only if the court is convinced that the jury's verdict is "seriously erroneous or a miscarriage of justice." *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002) (per curiam); *see also Carroll v. Cty. of Monroe*, 712 F.3d 649, 653 (2d Cir. 2013) (per curiam).

### B. Application to the Facts of This Case

The Plaintiff asserts that the evidence presented at trial supports a finding for him on both of his claims, and that the jury's verdict was erroneous and resulted in a miscarriage of justice. ECF 77. He also argues that the Defendants made several improper statements during their summation that merit a new trial. *Id.* The Plaintiff reiterates his trial arguments about the three defamatory statements made by the Defendants. *Id.* at 8–9. He also provides a merits-based argument for why he is entitled to relief on both of his claims. *Id.* at 8–14.

The Plaintiff claims that he submitted evidence showing he did not commit the acts alleged in the defamatory statements; that the Defendants presented no evidence that the Plaintiff was guilty; and that they gave misleading accounts of trial evidence during summation, such as (a) statements received by the Defendants from the community in response to the Crime Alert, which only served to prejudice the Plaintiff's character; (b) a text message the Plaintiff sent to a friend saying that he intended to go to school the night he was arrested, because it disregards that the Plaintiff turned himself into the SCPD; and (c) Friberg's testimony, which revealed no evidence of the Plaintiff having taken pictures of the child. *Id.* at 16–20. He further argues that the Defendants did not have probable cause to make their defamatory statements. *Id.* at 20–23.

In opposition, the Defendants argue that the verdict was neither seriously erroneous nor a miscarriage of justice, in that the jury determined that the Plaintiff failed to establish that the three claimed defamatory statements were false. ECF 81-1 at 9. In so doing, they argue, the jury "rejected the plaintiff's testimony that he did not commit the crime with which he was charged, and credited the testimony of the defendants and the extrinsic video and documentary evidence." *Id.* They interpret the jury's verdict as maintaining that Collins either never accused the Plaintiff of taking photos of children, or, even if he had made that statement, the accusation was true. *Id.* at 10. They further note that a court should not overturn a jury's determination of a witness's credibility. *Id.* at 11.

The Defendants contend that Collins testified that the victim gave a physical description of the person who took the picture, and that the Plaintiff was the only person who appeared on the surveillance footage to meet that description. *Id.* They also argue that Murphy viewed the footage and agreed that based on the Plaintiff's matching the physical description provided by the victim, they had probable cause to believe the Plaintiff committed the crime. *Id.* at 10. As to Friberg, they assert that he testified that although the SCPD did not recover photos from the Plaintiff's phone, that it was possible that the Plaintiff could have deleted the photos so that none could be recovered. *Id.*

The Defendants further assert that comments made during summation were proper and not prejudicial. *Id.* at 11. They note that the Plaintiff's counsel did not object to any of the comments made during summation, and thus, the Court must review these unpreserved objections for plain error. *Id.* Under this standard, there is no basis for a new trial, because (a) the Court instructed the jury on more than one occasion that summation statements are not evidence; (b) the statements received by the detectives in response to the Crime Alert were

8

introduced into evidence without objection, and their purpose was to rebut the Plaintiff's testimony that he was not the type of person who would commit such an offense; (c) the text message speaks for itself; and (d) the summation accurately described Friberg's testimony. *Id.* at 13–14. In addition, the Defendants ask that if the Court grants a new trial, the Court should rule that the Defendants are entitled to qualified immunity. *Id.* at 15.

In reply, the Plaintiff asserts that even though he failed to object to the statements in the summation, they still merit granting the Rule 59 motion under the Plain error standard. ECF 84 at 8. He claims that the Defendants in summation promoted a theory that, based on Friberg's testifying that people who use phones to commit crimes may carry two phones, the Plaintiff could have been carrying a second phone, despite no evidence at trial suggesting that he did. *Id.* at 4. The Plaintiff also argues that the statements the Defendants received in response to the Crime Alert do not rebut the Plaintiff's evidence that he was not the type of person to commit a sex crime. *Id.* at 5–6. He also argues that his text about going to school did not show a consciousness of guilt, it reflected his attorney's advice not to talk about the case. *Id.* at 7–8. The Plaintiff also argues that the Defendants are not entitled to qualified immunity. *Id.* at 8–10.

The Court denies the motion for a new trial. The Plaintiff's motion relies on two arguments: (1) the verdict was erroneous; and (2) the summation was improper. The Court addresses each of those arguments below.

### 1. The Verdict

The Court observes that the jury's verdict appears to turn on credibility determinations of the Plaintiff, Collins, and Murphy. The Second Circuit applies a "high degree of deference .. to the jury's evaluation of witness credibility," even though Rule 59 "affords trial courts latitude in reviewing jury verdicts and in considering credibility when doing so." *Raedle v Credit Agricole*

9

*Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012); *see United States v. Landau*, 155 F.3d 93, 105 (2d Cir. 1998).

In assessing a motion for a new trial, Rule 59 does empower courts with the discretion to assess a witness's credibility. *See Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 147 (2d Cir. 2001) ("Freed from the constraints of review that bind a court when deciding whether to grant judgment as a matter of law," in evaluating a motion for a new trial, "the district court [can] examine the evidence through its own eyes."); *see also Parker v. Bulik*, No. 11-CV-5412, 2017 WL 3396440, at *15 (E.D.N.Y Aug. 5, 2017) (Spatt, *J.*). However, a court should rarely disturb such a credibility determination. *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) ("[T]he court should only grant such a motion when the jury's verdict is egregious, a court should rarely disturb a jury's evaluation of a witness's credibility.") (internal quotation marks omitted); *Green v. Groneman*, 634 F. Supp. 2d 274, 277–78 (E.D.N.Y. 2009) (Spatt, *J.*); *see Maureen Christensen v. Cty. of Duchess, N.Y.*, 548 F. App'x 651, 653 (2d Cir. 2013) (summary order)

No such egregious verdict resulted from the jury's credibility determination here. The jury heard testimony from witnesses for both parties with regard to the alleged statements: With regard to the Defendants, they presented testimonial, documentary, and video evidence to support their belief that at the time of the incident in the restroom, they believed that the Plaintiff had taken the photos of the child. The Court also instructed the jury on the meaning of credible evidence. *See* Tr. at 574 ("What does a preponderance of the credible evidence mean? The credible evidence means the testimony or exhibits that you find to be worthy of belief.") The jury had an opportunity to review this evidence when rendering their verdict.

Upon review of this evidence, the jury concluded that the Plaintiff had failed to prove by a preponderance of the evidence that the Defendants had made the alleged defamatory statements. *See ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 99 (2d Cir. 2014) ("Given that this finding turned to a large extent on the credibility of the witnesses who testified before the jury, the finding and the verdict which followed are particularly ill-suited to after-the-fact second guessing."); *see also Raedle*, 670 F.3d at 418–19; *cf. Jackson v. Tellado*, 295 F. Supp. 3d 164, 183 (E.D.N.Y. 2018) (denying that a verdict sheet was confusing because "the jury ultimately credited Plaintiff's testimony over other evidence, including his witness's testimony, over Defendants' testimony, and [the jury's] verdict turned substantially on the evaluation of the parties' credibility.").

In this case, the jury's trusting of the accounts of the Defendants over that of the Plaintiff does not meet the high threshold required for overturning a credibility determination. *See, e.g., Koch v. Greenberg*, 14 F. Supp. 3d 247, 262–63 (S.D.N.Y. 2014) (ruling that the jury was "within its rights to credit" a party's witnesses where opposing counsel exposed them to cross-examination and the court instructed the jury on the evaluation of credibility); *James v. Melendez*, 567 F. Supp. 2d 480, 484–85 (S.D.N.Y 2008) (refusing to grant a Rule 59 motion where the "jury's verdict was reasonably supported by" a police officer's credible testimony); *see also Equal Emp't Opportunity Comm'n v. United Health Programs of Am., Inc.*, No. 14-CV-3673, 2020 WL 1083771, at *5 (E.D.N.Y. Mar. 6, 2020) ("Even weighing evidence under Rule 59, the court cannot find that the jury reached an egregious or seriously erroneous result in crediting Benedict's and Josey's testimony . . . . As described in detail below, and as discussed in footnote three, Benedict and Josey offered testimony that the jury found credible.").

In addition, the Plaintiff dedicates much of his motion to describing why his two claims are meritorious. This is inappropriate in a motion for a new trial, as "'Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Jalal v. Shanahan*, No. 16-CV-281, 2018 WL 10466837, at *3 (E.D.N.Y. May 10, 2018) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)); *see Sec. and Exch. Comm'n v. Callahan*, No. 12-CV-1065, 2016 WL 11499455, at *1 (E.D.N.Y. Oct. 4, 2016) (Spatt, *J.*) (citing *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F. 3d 36, 52 (2d Cir. 2012).

## 2. Summation

Although the summation issue is a closer decision, the Court still agrees with the Defendants and denies the Rule 59 motion. In ruling on a motion for a new trial based on an improper summation, "the key inquiry is whether counsel's conduct 'created undue prejudice or passion which played upon the sympathy of the jury.'" *Okraynets v. Metro. Transp. Auth.*, 555 F. Supp. 2d 420, 428 (S.D.N.Y. 2008) (quoting *Strobl v. N.Y. Mercantile Exch.*, 582 F. Supp. 770, 780 (S.D.N.Y. 1984)). The trial court judge receives "'[g]reat discretion'" when determining whether such undue prejudice existed, because the judge "'was present throughout the whole trial and is best able to determine the effect of the conduct of counsel on the jury.'" *Id.* (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1289 (2d Cir. 1990)). A party's failure to allege prejudice about statements made during a trial undercuts a claim that a summation relying on those statements was prejudicial. *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, 955 F. Supp. 2d 118, 158 (E.D.N.Y 2013).

That the Plaintiff did not object to the summation arguments weakens his contentions now. *See id.*; *see also Valentin v. Cty. of Suffolk*, 342 F. App'x 661, 663 (2d Cir. 2009)

(summary order) ("There is no basis for concluding that defense counsel's references to Valentin's prior convictions, which Valentin readily discussed in his own testimony and to which Valentin offered no objection at the time, created undue prejudice or passion that inflamed the jury."). Based on this lack of an objection, the Court reviews the summation comments only for plain error. *See O'Hara v. City of New York*, 570 F. App'x 21, 25 (2d Cir. 2014) (summary order). Under that standard, a court rejects "any assignment of error that does not amount to flagrant abuse which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012) (internal quotation marks omitted); *United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005).

The comments made during summation were not plainly erroneous. The reference to the community's reaction to the Crime Alert, along with the text message, meant to undercut the Plaintiff's assertions as to his character, and do not reach the level of flagrant abuse necessary to grant a Rule 59 motion. *See Picarella v. HSBC Secs. (USA) Inc.*, 724 F. App'x 22, 24 (2d Cir. 2018) (summary order) ("Nor were HSBC counsel's arguments on summation—to the effect that this case was about greed, opportunism, and exceptional laziness and that Picarella was making a 'mockery' of the law—'so inflammatory or so unsupported by the record as to affect the integrity of the trial and entitle [Picarella] to a new trial.'" ) (quoting *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005)); *see Claudio*, 955 F. Supp. 2d at 155 ("To begin with, when arguing to a jury, counsel must properly have some latitude, so long as prejudice does not appear.") (internal quotation marks omitted).

Further supporting the Defendants is that the Court did inform the jury that arguments made in summation do not constitute evidence. *See Beyer v. New York City Fire Dep't*, 310 F. App'x 417, 419 (2d Cir. 2008) (summary order) ("The District Court further determined that any

possible impropriety was remedied by the Court's repeated instructions to the jury that statements by lawyers were not evidence. We find no basis in the record to disagree") (internal citation omitted). In addition, the Court does not credit the assertion made in the Plaintiff's reply that the Defendants put forth a theory in summation that the Plaintiff could have been using a second phone to take pictures. At summation, the only mention of Friberg was his testimony that the Plaintiff could have deleted pictures from his phone prior to its confiscation. The Defendants did raise this two phone theory argument in their opposition to the Rule 59 motion, but that has no bearing on the substance of their summation. As to the Plaintiff's assertion about probable cause, that argument goes to the underlying merits of the case, which is not appropriate in a Rule 59 motion. *See Jalal*, 2018 WL 10466837, at *3.

Accordingly, the Court denies the Rule 59 motion. In addition, the Court need not reach the Defendants' arguments concerning qualified immunity.

## III. CONCLUSION

For the foregoing reasons, the Court denies the Plaintiff's Rule 59(a) motion for a new trial. The Clerk of the Court is directed to close the case.

It is **SO ORDERED.**

/s/ Arthur D. Spatt

Arthur D. Spatt, U.S.D.J.

March 18, 2020

Date